Case No. 22-5734

# In the United States Court of Appeals for the Sixth Circuit

NICHOLAS SANDMANN,

*Plaintiff - Appellant,*

v.

NEW YORK TIMES COMPANY

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

## SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLEE NEW YORK TIMES COMPANY

John C. Greiner
Darren W. Ford
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law
dford@graydon.law

Dana Robinson Green
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Phone: (212) 556-1234
Fax: (212) 556-4634
dana.green@nytimes.com

*Attorneys for Defendant-Appellee The New York Times Company*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

SUPPLEMENTAL COUNTERSTATEMENT OF ISSUES .................................. 1

SUPPLEMENTAL STATEMENT OF THE CASE ................................................ 2

I.    PROCEDURAL AND FACTUAL HISTORY ............................................ 4

    A.    The NYT Article ................................................................ 4

    B.    Sandmann's Claim Against The Times............................... 6

STANDARD OF REVIEW ............................................................................ 7

SUMMARY OF THE ARGUMENT ................................................................ 8

ARGUMENT .............................................................................................. 9

I.    The "Blocking Statement" in the Context of the NYT Article Is Non-Actionable Opinion.......................................................................... 9

    A.    The Context in Which the Blocking Statements Appeared Reinforced their Subjective Nature ..................................... 10

    B.    The Language and Tenor of the NYT Article Reinforced the Subjective Nature of the Blocking Statements ................... 11

    C.    The NYT Article Did Not Imply Undisclosed Facts ......... 12

II.    Summary Judgment Should be Affirmed as to The Times Because the NYT Article Lacks Defamatory Meaning...................................... 14

    A.    The NYT Article Does Not Convey Sandmann's Pleaded Defamatory Meaning........................................................ 14

    B.    The NYT Article is not Defamatory Because it Presented Competing Views Without Crediting Them ...................... 17

III.    Summary Judgment as to The Times Also Should be Affirmed Because the NYT Article is Substantially True ........................... 18

CONCLUSION .......................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................................... 21

CERTIFICATE OF SERVICE ....................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ayyadurai v. Floor64, Inc.*,
   270 F. Supp. 3d 343 (D. Mass. 2017) .................................................................. 13

*Brimelow v. N.Y. Times Co.*,
   2020 U.S. Dist. LEXIS 237463 (S.D.N.Y. Dec. 17, 2020) ............................... 12

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ............................................................................ 14

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) .............................................................................. 15

*Croce v. N.Y. Times, Co.*,
   930 F. 3d 787 (6th Cir. 2019) ....................................................................... 17, 18

*Digest Publ'g Co. v. Perry Publ'g Co.*,
   284 S.W.2d 832 (Ky. 1955) ................................................................................ 14

*Edwards v. Schwartz*,
   378 F. Supp. 3d 468 (W.D. Va. 2019) ............................................................... 13

*Evanger's Cat & Dog Food Co., Inc. v. Thixton*,
   412 F. Supp. 3d 889 (N.D. Ill. 2019) ................................................................. 13

*Friendship Empowerment & Econ. Dev. v. WALB-TV*,
   2006 U.S. Dist. LEXIS 27785 (M.D. Ga. May 10, 2006) .................................. 13

*Gallagher v. Philipps*,
   563 F. Supp. 3d 1048 (C.D. Cal. 2021) ............................................................. 12

*List v. Driehaus*,
   779 F.3d 628 (6th Cir. 2015) .............................................................................. 19

*Metabolife Int'l v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .............................................................................. 15

*Nichols v. Moore*,
   477 F.3d 396 (6th Cir. 2007) .............................................................................. 15

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................. 13

*Sandmann v. WP Company LLC*,
    401 F. Supp. 3d 781 (E.D. Ky. 2019) ................................................................. 14

*Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n*,
    158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424 (Ohio
    10th Dist. 2004) .................................................................................................. 19

*White v. Fraternal Order of Police*,
    707 F. Supp. 579 (D.D.C. 1989), *aff'd*, 909 F.2d 512 (D.C. Cir.
    1990) ................................................................................................................... 17

*Yancy v. Hamilton*,
    786 S.W.2d 854 (Ky. 1990) ............................................................................... 14

## <u>SUPPLEMENTAL COUNTERSTATEMENT OF ISSUES</u>

The Times adopts and incorporates by reference the Counterstatement of the

Issues set out in the Joint Brief.

## SUPPLEMENTAL STATEMENT OF THE CASE

On January 19, 2019, The Times reported on an ongoing public controversy. The controversy had begun the previous day, after an online video went "viral." The video appeared to show a large group of young men—most of them white and many wearing the red "Make America Great Again" hats popularized by President Trump—shouting and laughing on the steps of the Lincoln Memorial. Into their midst walked a smaller group of Native Americans, led by an elderly man beating a ceremonial drum and singing. The elderly man (later identified as Nathan Phillips), moved through the crowd largely unobstructed until he reached a young  man wearing a MAGA hat (later identified as plaintiff, Nicholas Sandmann). The two men then stood face to face, encircled by the boisterous crowd and apparently at a stalemate.

As The Times reported, the video prompted a vociferous public debate about the young men's behavior and the meaning of the incident. Major social and political figures weighed in, including members of Congress. And the meaning of the incident continues to be debated to this day, becoming something of a social Rorschach test, with different constituencies interpreting events very differently.

The Times reported all of this: the content of the video, the varying reactions, the debate about the video's meaning. Among those quoted was Phillips. The Times was unable to reach him directly, so—like many other news organizations—it

republished a statement he had given to The Washington Post. As repeated in The Times, Phillips stated that: "I started going that way, and that guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat." Defendant The New York Times Company's Supplemental Memorandum of Law in Support of Motion for Summary Judgment ("Supp. Memo."), RE 54-1, PageID#1090; Opinion and Order ("Op."), RE 81, PageID#2345 (the "blocking statement").

Sandmann's claim against The Times is premised on this single quote. He sued The Times for $65 million, claiming that Phillips's quote defamed him by accusing him of being a part of a "hate mob" engaging in "conduct that could constitute, among other things, a hate crime . . . and an assault" and "behavior constituting menacing racial intimidation of Phillips." Compl., RE 1, PageID#2.

After permitting limited discovery, the District Court properly rejected Sandmann's claims. Op., RE 81, PageID#2349-50. The District Court correctly held that Phillips' blocking statement was his subjective view of events, incapable of objective proof and thus non-actionable "opinion." Op., RE 81, PageID#2349. While the District Court did not address in detail the specific circumstances in which each publication reported Phillips's comments, the full context of the NYT Article only reinforces that decision. The judgment below should be affirmed. This Court also may also affirm the judgment on three alternative grounds: the NYT Article lacks

defamatory meaning, it is substantially true, and it is outside the statute of limitations.[1]

## I.     PROCEDURAL AND FACTUAL HISTORY

The Times incorporates by reference the procedural and factual history set out in the Joint Brief at 4-28. The following supplements that submission with facts specific to The Times.

### A.     The NYT Article

On January 19, 2019, The Times published an article about the viral video of the encounter between Phillips and the Covington Catholic students and the controversy it engendered. The NYT Article included a link to the video itself, immediately below the headline. Plaintiff's Complaint with Jury Demand ("Compl.") Exhibit G, RE 1-7, PageID#85.

The NYT Article began by introducing who appeared in the video: Catholic high school students attending the March for Life and a Native American elder attending the Indigenous Peoples March. *Id.* It explained what the video showed: "[t]hey intersected on Friday in an unsettling encounter" that involved "a throng of cheering and jeering high school boys" "surrounding a Native American elder." *Id.* It then quoted the boys' school saying "the incident was being investigated and could

---

[1] The Times does not address this third alternative basis for affirmance in this supplemental submission but relies on the Joint Brief. *See* Joint Br. at 65.

lead to punishment." *Id.*

The NYT Article then gave more detail about the video, explaining it showed: "one boy, wearing the red hat that has become a signature of President Trump, stood directly in front of the elder, who stared impassively ahead while playing a ceremonial drum." *Id.* It provided more information about the school and the March for Life before contextualizing the incident as "the latest touchpoint for racial tensions in America." *Id.* And it explained that the episode had drawn "widespread condemnation from Native American, Catholics and politicians alike," and offered two examples: statements from then-U.S. Congresswoman Deb Haaland (who is Native American) and the Sisters of Mercy (a Catholic organization). *Id.*

The NYT Article then identified Native American elder as Nathan Phillips. It explained that The Times had been unable to reach him for comment but that he previously had given an interview to The Washington Post, to which the article hyperlinked. *Id.* The article then quoted Phillips's statement to The Post that "that guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat." *Id.* The article also quoted other statements Phillips made in the video, in which he criticized the boys for chanting "Build that wall!", saying, "This is indigenous land. We're not supposed to have walls here." *Id.*

The NYT article then quoted an organizer of the Indigenous Peoples March explaining the purpose and importance of the march. *Id.* The article also reported

that the March itself had issued a statement cautioning that "there was more to [the incident] than was shown in the videos," and quoted one of the organizers explaining that what was not shown was that "the same youth and a few others became emotional because of the power, resilience and love we inherently carry in our DNA." *Id.*

The NYT article closed by reporting a public statement by the Kentucky Secretary of State, expressing "alarm" at the students' behavior, suggesting that adults—not the children—bore responsibility, and exhorting Kentuckians, "we are better than this." *Id.*

## B.     Sandmann's Claim Against The Times

Sandmann sued The Times on March 2, 2020, seeking more than $65,000,000.00 in damages, based on The Times's republication of Phillips' statement to The Post. Compl., RE 1, PageID#51. On April 27, 2020, The Times moved to dismiss Sandmann's Complaint on multiple grounds. Defendant The New York Times Company's Motion to Dismiss Plaintiff's Complaint (Doc. 1) ("Mot.") RE 18, PageID#137-38. The Court denied that motion. Memorandum Opinion and Order ("Order"), RE 27, PageID#227. Following limited discovery, the parties cross-moved for summary judgment. Brief of Plaintiff-Appellant ("Br.") at PageID#9. On July 26, 2022, the District Court granted the defendants' motions for summary judgment and denied plaintiff's summary judgment motion. Op., RE 81.

Sandmann timely appealed.

## **STANDARD OF REVIEW**

The Times adopts and incorporates herein by reference the standard of review

set out in the Joint Brief.

## **SUMMARY OF THE ARGUMENT**

Sandmann's claim against The Times is premised on a single, newsworthy quote in a non-defamatory report about important current events. Judgment for The Times should be affirmed for the reasons set out in the Joint Brief, which The Times adopts in full. The District Court properly determined, applying well-settled legal principles, that the quote was a subjective statement, not susceptible to object proof, and the NYT Article did not imply any undisclosed, defamatory facts. Judgment also should be affirmed on the alternative grounds that the NYT Article lacked defamatory meaning, it was substantially true, and Sandmann's claims are outside the statute of limitations.

## ARGUMENT

The sole issue on appeal is whether the "blocking statement," within the context of the NYT Article, is actionable. The District Court correctly held that it is not. The decision should be affirmed.

## I.   THE "BLOCKING STATEMENT" IN THE CONTEXT OF THE NYT ARTICLE IS NON-ACTIONABLE OPINION

As the District Court noted and Sandmann acknowledges on appeal, opinion is a context-specific analysis. Op., RE 81, PageID#2342; Br. at PageID#20 (courts must "focus not only on the statement itself, but also on the entire context in which the statement was made"). Nevertheless, on appeal, Sandmann now wrongly attempts to reduce the analysis to a single factor: whether the words at issue, in isolation, can ever be provably false. Br. at PageID#16. As Appellees set out, that has never been the legal standard. Joint Brief for Defendants-Appellees ("Joint Br.") at 32-34.

Instead, the District Court properly evaluated whether a reasonable reader would understand the blocking statement to be opinion by reference to well-settled factors, including: whether the words at issue are objectively verifiable; the context in which the words appeared and the language and tenor of the publication; and whether the blocking statement implied undisclosed, defamatory facts. Joint Br. at 33-34. The District Court correctly found, based on these factors, that the words at issue were "objectively unverifiable." Op., RE 81, PageID#2816.

The District Court did not parse the specifics of each publication at issue. Op., RE 81, PageID#2348-49. But were the court to do so, the context in which the blocking statements appeared in the NYT Article only reinforces the Court's conclusion.

### A.    The Context in Which the Blocking Statements Appeared Reinforced their Subjective Nature

An online reader opening the NYT Article would first have been presented with the viral video at issue, which played directly below the headline. The opening scene of that video shows Sandmann and Phillips at odds within a boisterous crowd of students, with Phillips drumming and praying close to Sandmann. The first line of the article explains who they are by reference to their differences ("*They* were Catholic high school students" at a pro-life march; "*He* was a Native American elder" at an indigenous people's march) and describes their meeting as "an unsettling encounter." Immediately, readers would have understood the article to be about a controversy involving people with potentially conflicting identities and perspectives.

The subsequent paragraphs reinforced that: the article explained that the viral video was "the latest touchpoint," drawing on deeper schisms in society and politics. It offered context to why a video of young men wearing "MAGA" hats, surrounding a Native elder, might be particularly divisive. It explained that the viral video had prompted strong reactions and quoted some of those reactions. By the time readers reached the quote from Phillips—thirteen paragraphs into the article—they already

would have encountered the subjective views of the Diocese of Covington and Covington Catholic High School, Congresswoman Deb Haaland, the Sisters of Mercy, and a spokesperson for the Indigenous People's Movement. And after quoting Phillips, the article continued to include obviously subjective perspectives, including Native American organizers reflecting on the meaning of the event and making comments in defense of the students. The article closed with Kentucky's Secretary of State expressing her "alarm" at what she saw in the video and blaming parents, rather than the students, before exhorting her fellow Kentuckians to be "better." Each of those viewpoints—including Phillips—was presented to readers with context about the speaker's particular perspective or potential biases, such as their race, political affiliation, or religious beliefs.

### B. The Language and Tenor of the NYT Article Reinforced the Subjective Nature of the Blocking Statements

The language and tenor of the publication also reinforced the subjective nature of Phillips's comments. Although the article itself was a news report, much of the content consisted of quoting or paraphrasing the (sometimes strident) viewpoints of others. Those viewpoints were laden with subjective language: apologies, calls for "dignity and respect of the human person," despair at "how common decency has decayed," interpretations of the meaning of "Catholic social teaching," assertions that "traditional knowledge is being ignored by those who should listen," and refusals to "shame and solely blame" the students. None of the quoted individuals

were presented as offering a dispassionate, impartial account of events—and neither was Phillips. As Sandmann himself argues, that supports finding the statement to be non-actionable opinion. Br. at PageID#28-29.

In an effort to overcome the obvious weight of this context, Sandmann suggests the blocking statement is not "opinion" because it appeared in a news report rather than an "editorial, cartoons, or humorous pieces." Br. at PageID#20-21. *See also id.* at PageID#35-36. But news articles are certainly not excluded from constitutional protections for opinion. Courts routinely deem statements in news articles to be opinion. *See, e.g.*, *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1092-93 (C.D. Cal. 2021) (New York Times news articles contained nonactionable opinion); *Brimelow v. N.Y. Times Co.*, 2020 U.S. Dist. LEXIS 237463, at **17, 24, 30 (S.D.N.Y. Dec. 17, 2020) (New York Times news articles contained nonactionable opinion and specifically rejecting the argument that statements in news articles cannot be "opinion" as a matter of law). Where the statement was a quote, attributed to a participant in a controversy, describing his experience, it is particularly unclear why that should receive different protection from, say, an editorial written by that same participant, stating the same thing.

### C.    The NYT Article Did Not Imply Undisclosed Facts

The District Court held that the blocking statements "did not imply the existence of any nondisclosed defamatory facts." Op., RE 81, PageID#2819.

Sandmann apparently does not challenge that determination, nor does the record suggest any basis to do so. And the context of the NYT Article only reinforces that conclusion. The NYT Article included the viral video itself, at the very top of the article. Readers could readily watch the video, see the encounter between Phillips and Sandmann, and judge Phillips' statements for themselves.

These are precisely the kinds of disclosed facts that render a statement pure opinion as a matter of law. *See, e.g., Evanger's Cat & Dog Food Co., Inc. v. Thixton*, 412 F. Supp. 3d 889, 902 (N.D. Ill. 2019) (posting of "relevant links and content" constituted facts underlying protected opinion); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 481 (W.D. Va. 2019) (hyperlinks to online materials, including an audio recording, considered to be disclosed facts); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 360 (D. Mass. 2017) (hyperlinks to "relevant background information" formed part of "full factual basis for [defendant's] opinion"); *Friendship Empowerment & Econ. Dev. v. WALB-TV*, 2006 U.S. Dist. LEXIS 27785, at *13 (M.D. Ga. May 10, 2006) (differing views as to what surveillance video showed in newscast were opinions based on disclosed facts); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) (posting sufficiently disclosed the underlying facts behind claim of plaintiff's alleged embezzlement by hyperlinking to other articles). On that basis, too, the judgment should be confirmed.

## II.   SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO THE TIMES BECAUSE THE NYT ARTICLE LACKS DEFAMATORY MEANING

Although the District Court did not reach the issue, summary judgment also should be affirmed as to The Times because the NYT Article did not convey the defamatory meaning Sandmann alleges. Joint Br. at 61-64. To be defamatory, words must "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people[.]" *Sandmann v. WP Company LLC*, 401 F. Supp. 3d 781, 789–90 (E.D. Ky. 2019) (quoting *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955)). *See also* Joint Br. at 62-64. This is not a low bar: "[m]erely offensive or unpleasant statements" are not defamatory. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

To determine the meaning of the words at issue, courts must examine the statements in the context of the entire publication. Joint Br. at 63-64 (collecting cases). In doing so, a court should not strain to find defamatory meaning but should adopt the most "natural and probable" meaning to "the average lay reader." *Yancy v. Hamilton*, 786 S.W.2d 854, 858-59 (Ky. 1990).

### A.   The NYT Article Does Not Convey Sandmann's Pleaded Defamatory Meaning

Sandmann's Complaint against The Times asserts that the NYT Article accused him of having "confronted and blocked the path of Nathan Phillips" and of having "prevented Phillips's retreat." Compl., RE 1, PageID#2. This summary

already adds words and framing that do not appear in the NYT Article. Perhaps appreciating that to be confrontational or an obstruction is not actually defamatory, Sandmann then extrapolates further, claiming these phrases in the NYT Article accused him "of racist misconduct," "a hate crime," and "physical[ ] assault and harass[ment]." *Id.* None of those allegations actually appear in the article.

Where, as here, the claim relies on implication, courts have repeatedly expressed caution. *See, e.g., Nichols v. Moore*, 477 F.3d 396, 402 (6th Cir. 2007) (although Michigan law permits such claims, "claims of defamation by implication, which by nature present ambiguous evidence with respect to falsity, face a severe constitutional hurdle."). This is because of the obvious risk of imposing liability for a meaning that the author did not intend or foresee, and one that the plaintiff essentially has constructed for his own benefit. *See, e.g.*, *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 528-29 (6th Cir. 2007) (cautioning against finding unintended meaning); *Metabolife Int'l v. Wornick*, 264 F.3d 832, 854 (9th Cir. 2001) (cautioning that although "California recognizes the theory of defamation by implication, . . . a plaintiff may not construct an actionable statement by reading whatever implication it wishes into the defendants' words. . . . [the court must] refrain from scrutinizing what is not said to find a defamatory meaning which the article does not convey to a lay reader.")

Sandmann's claimed implication—that Phillips's saying he was "blocked"

suggests he committed assault and a hate crime—strains the words beyond their natural meaning and is directly undermined by his own appeal. On appeal, Sandmann now argues that "block" has a simple meaning: that person A stood in person B's way. Br. at PageID#29. This is such an everyday occurrence, he argues, "it is something that all of us, at some time in our lives, have either done or had done to us." *Id.* at PageID#28. *See also id.* at PageID#31 ("People use the word "block" in everyday discourse."). These arguments are obviously contradictory. Sandmann cannot argue, on the one hand, that "blocking" is an unremarkable everyday occurrence and also argue it would naturally be understood as a racist hate crime.

Nothing in the NYT Article signaled that "blocked" should carry that kind of unusual, criminal meaning. Nothing in the Article, for example, suggested that the unnamed young man who stood opposite Phillips was suspected of a crime: law enforcement is nowhere mentioned. No one suggests that Sandmann made physical contact with Phillips. No one alleges Sandmann said anything racist or threatening— indeed, no one alleges he spoke at all. Several quoted individuals argue that the collective behavior of the young men was shameful, but they frame their criticism in terms of respect and decorum: the boys' "behavior" was contrary to "the Church's teachings on the dignity and respect of the human person;" they displayed "disrespect and intolerance." The only potential consequences discussed are academic: the boys' school asserted that it was investigating and might discipline

the students, which a private institution obviously has the discretion to do. But the spokesperson signaled that the unspecified potential misconduct was that the boys failed to exhibit the school's religious values. The speculated consequences were not specific to Sandmann and certainly were not criminal. In short, the text of the NYT Article neither implied nor stated the defamatory meaning Sandmann alleges.

### B.    The NYT Article is not Defamatory Because it Presented Competing Views Without Crediting Them

As set out below and in the Joint Brief, the article also is not defamatory because, taken as a whole, it reported on newsworthy allegations and competing viewpoints without adopting or conveying any defamatory conclusion. Joint Br. at 64-65. The legal principle here is one recently articulated by this Court in *Croce v. N.Y. Times, Co.*, 930 F. 3d 787 (6th Cir. 2019) and is distinct from the "neutral report privilege," which Kentucky does not recognize. Rather, what the court in *Croce* held is that a balanced report of allegations and defenses, which does not suggest the allegations to be true or proven, lacks defamatory *meaning* because it does not convey to readers that the subject of the reporting has, in fact, engaged in misconduct. *Id.* at 794. Courts in other jurisdictions have articulated the same principle. *See, e.g.*, *White v. Fraternal Order of Police*, 707 F. Supp. 579, 589 n.12 (D.D.C. 1989) ("If a newspaper accurately reported that an individual was arrested and charged with a crime, a reader could reasonably infer, *i.e.,* guess, surmise, or derive as a probability, that the individual actually committed the crime. However,

unless the newspaper article, considered as a whole, in context, could be reasonably understood to express that the individual in fact committed the crime, the newspaper report would not be actionable, questions of privilege aside."), *aff'd*, 909 F.2d 512 (D.C. Cir. 1990).

Similar to the facts in *Croce*, the NYT Article conveyed there had been "an unsettling encounter" and that a video of it had gone viral and prompted significant criticism and commentary. But the article appropriately set out the potential biases of those critics, the preliminary state of any investigation, and did not accord *merit* or reliability to those criticisms. As in *Croce*, the overall thrust of the article did not convey that the young men had, in fact, engaged in misconduct—let alone misconduct rising to the level of defamation.

III. **SUMMARY JUDGMENT AS TO THE TIMES ALSO SHOULD BE AFFIRMED BECAUSE THE NYT ARTICLE IS SUBSTANTIALLY TRUE**

As set out in the Joint Brief, even if the blocking statements were deemed to be statements of fact in the context of the NYT Article, the District Court decision still should be affirmed on the alternate ground that the statements are substantially true. Joint Br. at 54. The undisputed record—including Sandmann's own deposition testimony—establishes that Sandmann saw Phillips moving through the crowd, positioned himself in front of Phillips, and resolved not to step aside in order to send a message to Phillips. *Id.* at 58-59. Within a few moments, both men were so closely

surrounded by the crowd, they were boxed in. *Id.* at 26-27. Sandmann's testimony aligns with that of Phillips, he just rejects that he did anything wrong. But a statement that is subject to different interpretations is not "false." *List v. Driehaus*, 779 F.3d 628, 633 (6th Cir. 2015) (quoting *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n*, 158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 18 (Ohio 10th Dist. 2004)). Discovery shows the NYT Article to be substantially true and on that basis, too, the decision should be affirmed.

## CONCLUSION

For each and all of the foregoing reasons, as well as the reason set forth in the Joint Brief, The Times respectfully requests that this Court affirm the judgment below.

Respectfully submitted,

/s/ *John C. Greiner*
John C. Greiner
GRAYDON HEAD & RITCHEY LLP
312 Walnut St., Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.com

J. Stephen Smith
Darren W. Ford
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.com
dford@graydon.com

Dana R. Green
The New York Times Company
620 8th Avenue, 13th Floor
New York, NY 10018
Phone: (212) 556-1234
Fax: (212)-556-4634
dana.green@nytimes.com

*Counsel for The New York Times Company*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3866 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)(7).

I further certify that this brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: December 23, 2022

*/s/ John C. Greiner*
John C. Greiner

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2022, I electronically filed the foregoing Joint Brief for Defendants-Appellees with the Court using the CM/ECF system upon all counsel of record. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 23, 2022

*/s/ John C. Greiner*
John C. Greiner