**Case Nos. 22-5734 / 22-5735 / 22-5736 / 22-5737 / 22-5738**

# In the United States Court of Appeals for the Sixth Circuit

NICHOLAS SANDMANN,

*Plaintiff-Appellant*,

v.

NEW YORK TIMES COMPANY
CBS NEWS, INC., *et al.*
ABC NEWS, INC., *et al.*
ROLLING STONE, LLC, *et al.*
GANNETT CO, INC., *et al.*,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
HONORABLE WILLIAM O. BERTELSMAN, DISTRICT JUDGE, PRESIDING
Case Nos. 2:20-cv-00023, 2:20-cv-00024, 2:20-cv-00025, 2:20-cv-00026, 2:20-cv-00027

**REPLY BRIEF OF PLAINTIFF-APPELLANT**
**ORAL ARGUMENT REQUESTED**

TODD V. MCMURTRY, ESQ.
JEFFREY A. STANDEN, ESQ.
J. WILL HUBER, ESQ.
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiff-Appellant, Nicholas Sandmann*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES .......................................................................... ii

INTRODUCTION ......................................................................................1

ARGUMENT ..............................................................................................3

    I.    Defendants' Statements are Fact, Not Opinion .........................................3

        1.    The Defendants' Erroneous Legal Standard ..................................6

        2.    "Subjectivity" Does Not Indicate a Statement Is Not Factual ........................................................................................6

    II.    The Law of the Case ..................................................................8

    III.    The Defendants' Alternative Grounds ....................................................10

        1.    The Statements are False, not True nor Substantially True ........10

        2.    The Statements are Defamatory ....................................................13

        3.    The Complaint is Not Barred by the Statute of Limitations .........15

        4.    The Defendants' Supplemental Briefs ...........................................16

CONCLUSION ..........................................................................................18

CERTIFICATE OF COMPLIANCE ..........................................................19

CERTIFICATE OF SERVICE ...................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Advanced Technology Corp. v. Instron, Inc.*,
66 F. Supp. 3d 263 (D. Mass. 2014) ...................................................................7

*Bennett v. Cisco Systems, Inc.*,
63 Fed. App'x. 202 (6th Cir. 2003) .................................................................13

*Bradford v. Bracken County*,
767 F. Supp. 2d 740 (E.D. Ky. 2011) ..............................................................16

*Chi v. Loyola Univ. Med. Ctr.*,
787 F. Supp. 2d 797 (N.D. Ill. 2011)................................................................4

*Cianci v. New Times Pub. Co.*,
639 F.2d 54 (2d Cir. 1980) ..............................................................................1

*Croce v. New York Times Co.*,
930 F.3d 787 (6th Cir. 2019) ..........................................................................14

*Croce v. New York Times Company*,
345 F. Supp. 3d 961 (S.D. Ohio 2018)............................................................12

*Digest Publishing Co. v. Perry Publishing Co.*,
284 S.W.2d 832 (Ky. 1955).............................................................................13

*Doe #1 v. Syracuse Univ.*,
468 F. Supp. 3d 489 (N.D.N.Y. 2020)..............................................................8

*Edwards v. National Audubon Society, Inc.*,
556 F.2d 113 (2d Cir. 1977) ...........................................................................17

*Executive Branch Ethics Comm'n v. Stephens*,
92 S.W.3d 69 (Ky. 2002).................................................................................15

*Friendship Empowerment & Econ. Dev. v. WALB-TV*,
No. 1:04-CV-132(CDL), 2006 WL 1285037 (M.D. Ga. May 10, 2006)...........8

*Gahafer v. Ford Motor Co.*,
328 F.3d 859 (6th Cir. 2003) ..........................................................................13

*Hanson v. Madison Cty. Det. Crt.*,
736 Fed. App'x. 521 (6th Cir. 2018) ................................................................7

*Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*,
179 S.W.3d 785 (Ky. 2005).............................................................................11

*Levinsky's, Inc. v. Wal-Mart Stores*,
  127 F.3d 122 (1st Cir. 1997)................................................................4

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) ...........................................................................12

*McCall v. Courier-Journal and Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981)........................................................ 16, 17

*Metcalf v. KFOR-TV*,
  828 F. Supp. 1515 (W.D. Okla. 1992)................................................7

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ..................................................................... 1, 2, 6, 7

*National College of Kentucky, Inc. v. Wave Holdings, LLC*,
  536 S.W.3d 218 (Ky. Ct. App. 2017) ...............................................11

*Newton v. Dennison*,
  No. 4:14-CV-15-JHM,
  2014 U.S. Dist. LEXIS 104594 (W.D. Ky. July 31, 2014) ...............16

*Sandmann v. NBCUniversal, LLC*,
  E.D. Ky. Case No. 2:19-cv-00056 ....................................................13

*Shepard v. Courtoise*,
  115 F. Supp. 2d 1142 (E.D. Mo. 2000) .............................................4

*Smith v. McGill*,
  556 S.W.3d 552 (Ky. 2018)...............................................................15

*Std. Fire Ins. Co. v. Ford Motor Co.*,
  723 F.3d 690 (6th Cir. 2013) ...................................................11, 13

*T.S. v. Doe*,
  2010 U.S. Dist. LEXIS 107088 (E.D. Ky. 2011)............................16

*Tallman v. Elizabethtown*,
  No. 2006-CA-002542,
  2007 Ky. App. Unpub. LEXIS 835 (Ky. Ct. App. Nov. 2, 2007) ............ 15, 16

*Tannerite Sports, LLC v. NBCUniversal News Group*,
  864 F.3d 236 (2d Cir. 2017) .............................................................12

*Toler v. Süd-Chemie, Inc.*,
  458 S.W.3d 276 (Ky. 2014)...............................................................13

*Yancey v. Hamilton*,
  786 S.W.2d 854 (Ky. 1989)...............................................................12

*Yoder v. Workman*,
    224 F. Supp. 2d 1077 (S.D.W. Va. 2002) ..........................................................7

**Constitutional Provisions**

U.S. Const. amend. I .......................................................................................1

**Statutes**

KRS 413.090 to 413.160 ..............................................................................15

KRS 413.140(d) ............................................................................................15

KRS 413.170(1) ..................................................................................... 15, 16

## INTRODUCTION

The Defendants' argument misapprehends the "opinion" defense: just because people can perceive factual matters differently does not convert factual matters into protected opinion. If it did, then the Supreme Court's careful articulation of the intersection between the First Amendment and defamation law would be overridden. People perceive many sensory observations differently; there is likely not a single fact about the world with which one could find unanimous agreement. Nonetheless, for constitutional purposes, statements about these sensory observations are statements of fact.

"Opinions" and "facts," as described in constitutional precedent, are categories of speech. These categories are the "subject" of speech. Certain matters, such as political policy, are matters of opinion; other matters, specifically data observable through operation of senses, are matters of fact. Thus, a speaker who asserts that his strong political opinion is so based in reality that "it is fact, not opinion," is nevertheless uttering an opinion for constitutional purposes. Similarly, a speaker who prefaces her factual statement with the words, "in my opinion" is nonetheless making a factual statement. *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 64 (2d Cir. 1980); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990). It is the subject of the statement, and not its form, that determines its constitutional status.

The test that divides statements of fact from protected opinion is clear: are the matters included in the statement capable of being proved true or false? Are they verifiable? *Milkovich*, 497 U.S. at 21-22. Here, they are. In this matter, the subject of the statements published by the Defendants describe the movements of persons on a particular day and place. Not only can such readily observable matters be proved true or false, but here such proof is easy: the entire episode was filmed, from various angles and durations. All the objective evidence the jury will need is right at hand, is admissible, and will allow a full assessment. The video evidence shows that Nicholas Sandmann stood still, and that it was Nathan Phillips who walked into Sandmann's personal space, seeking a confrontation, while beating his drum mere inches from Sandmann's face. Phillips' subsequent description published by the Defendants falsely accuses Sandmann of "sliding left" and "sliding right," thereby "blocking" his path and "preventing [his] escape." These statements describe physical facts; they are detailed and graphic. They were not presented as opinion, nor is their subject a matter of opinion. All of these published statements are susceptible to being proved true or false.

In this appeal, the Defendants raise additional arguments, including the contention that, should this Court reject their constitutional "opinion" defense, it should find that their statements fit the common-law "truth" defense to defamation liability. By making this argument, the Defendants impliedly concede that their

2

published statements are indeed "capable of being proved true or false," and thus are statements of fact. The Defendants assert that Sandmann shifted his weight slightly from one foot to the other as he stood motionless on the concrete steps of the Memorial, and that that shifting, which they allege is visible on one of the several video recordings, proves, as a matter of law, that Sandmann did in fact move to his left and then to his right, all to block Phillips and prevent his retreat. This conclusion urged by the Defendants is patently contradicted by the ample video evidence and by the deposition testimony of Sandmann.

## ARGUMENT

### I.    Defendants' Statements are Fact, Not Opinion

In their lengthy recital of the facts in their Joint Brief,[1] Defendants' counsels write the circumspect article they wish their clients had published. Their actual publications, however, repeat, without prior investigation, the accusations of Nathan Phillips, in which Phillips stated that Sandmann, a youth on a school trip, "slided left" and "slided right," and thus "he blocked me" and "he wouldn't let me escape." The publication of these combustible accusations, made by a Native American protestor against a white, MAGA-hatted Catholic teenager, summarily unleashed a nationwide campaign of hatred, scorn, and ridicule against Sandmann. These are the

---

[1] The Defendants' Joint Brief is sometimes cited herein as "D.B."

actionable statements, and not the Defendants' nearly thirty-page journalistic treatment.

The published statements are actionable because they are factual. Whether or not Sandmann moved to block Phillips can be verified by objective evidence. *Levinsky's, Inc. v. Wal-Mart Stores*, 127 F.3d 122, 130 (1st Cir. 1997) (the statement, "you are sometimes put on hold for twenty minutes—or the phone is never picked up at all," constituted a statement of fact because it was verifiable by objective evidence). Merely because another observer of the event provides a different description of observable facts does not convert factual observations into "opinions"; every factual conclusion necessarily involves a degree of subjectivity. *Shepard v. Courtoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000) (plaintiff "abuses employees" is statement of fact); *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 806 (N.D. Ill. 2011) (plaintiff "had difficulties in interpersonal communication throughout his residency" is statement of fact). "Subjectivity" about facts, as the Defendants phrase it, does not indicate opinion. Every case involves disagreements on the facts.

The Defendants' recital of the facts impliedly proves Plaintiff's case. The Defendants state the following facts, among others: that Phillips "remained" in the area (D.B. 12), that he was "standing" at various places around the Memorial (*id.* 13), that he "beat" his drum (*id.* 14), that he "walked up" to the students, and so

forth. These claims are all presented as facts, with photographs and video excerpts cited in support. If statements describing Phillips' movements or positions are statements of fact, as the Defendants contend, then likewise are statements describing Sandmann's movements and positions.

The Defendants' account of the matter also selectively omits essential evidence from the record. It was Phillips, not Sandmann, who was confrontational, wading into a gathering of schoolchildren waiting for their bus; it was Phillips who walked up directly into Sandmann's personal space, beating his drum loudly just inches from Sandmann's face, his drumsticks brushing against Sandmann's jacket. As he testified and as video evidence shows, Sandmann never moved, not once in the whole encounter. Had the Defendants made even a minimal investigation into the actual events before they published their scurrilous charges, they would have quickly determined the utter falsehood of Phillips' claims and, acting reasonably, would not have published his defamatory statements.

Much of the Defendants' conjectures about the case are simply irrelevant. Refutation of "a pre-planned scheme" (D.B. 27, 37) or speculation as to what other people "could have perceived" (*id.* 23, 40), for example, are inadmissible. Similarly, the Defendants' description of cultural differences concerning prayer or the significance of song are not relevant; attempting to characterize this matter as a religious dispute is mere distraction. Notably, the Defendants do not claim that

words like "sliding left" or "sliding right" or "blocking" or "prevent my escape" are culturally determined or imbued with religious meaning. It is those words that are solely at issue.

### 1.    The Defendants' Erroneous Legal Standard

The Appellant's Brief provides the legal standard for "statements of fact": statements that are "sufficiently factual" to be "susceptible of being proved true or false" are actionable. *Milkovich*, 497 U.S. at 21. The Defendants term this standard as "mistaken," without citation. (D.B. 35). The Defendants do offer an example of how a statement that appears to describe a fact can actually be a statement of opinion. They assert that the statement "it is cold" (*id.* 40) is constitutionally protected opinion because people "may have different tolerance levels for temperature." This example shows the absurdity of Defendants' position. The temperature is a fact, and a thermometer and weather report would specify it. One might boast that "it's not too cold for me," but such statements about subjective experience do not mean that statements describing the temperature are not statements of fact. Would Defendants concede that "it is raining" is factual? That the sun shines? The Defendants' reasoning is inconsistent with Supreme Court precedent.

### 2.    "Subjectivity" Does Not Indicate a Statement Is Not Factual

Some measure of subjectivity is inherent in any factual observation; nonetheless, these statements can comprise "statements of fact" for constitutional

purposes. *Advanced Technology Corp. v. Instron, Inc.*, 66 F. Supp. 3d 263, 270 (D. Mass. 2014) (a list of "the most promising" scientific testing methods was statement of fact); *Yoder v. Workman*, 224 F. Supp. 2d 1077, 1082 (S.D.W. Va. 2002) ("[plaintiff has] engaged in a vitriolic campaign . . . of spurious and unethical legal actions" was a statement of fact); *Metcalf v. KFOR-TV*, 828 F. Supp. 1515, 1531 (W.D. Okla. 1992) (statement that "critics say" doctor's suites are not monitored closely enough is statement of fact).

"Opinion" and "fact" are terms of art. A "statement of fact" includes any statement that is "sufficiently factual," meaning that where a statement appears a mix of opinion and fact, the statement is to be actionable if it partakes of "sufficiently" factual nature. *Milkovich*, 497 U.S. at 3, 21-22. A statement is "sufficiently factual" if it is "susceptible of being proved true or false." *Id.* That "proof" is necessary implies that people might, before hearing proof, have different perspectives as to what they witnessed. It is not that people differ in their observations that make a statement an "opinion," as the Defendants argue repeatedly; it is whether those differences can be dispelled by evidence. Video evidence provides the strongest possible evidence of the truth of observable phenomena. *Hanson v. Madison Cty. Det. Crt.*, 736 Fed. App'x. 521, 527 (6th Cir. 2018) (where there is a video capturing the events in question, "the court must view those facts in the light depicted by the videotape.").

7

The only cases the Defendants cite in claiming that video evidence is not conclusive in determining statements of fact both involve highly interpretive statements about intent, precisely the sort of considerations not visible on videotape. (D.B. 46 (citing *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020) (description of conduct as "racist" and "homophobic"); *Friendship Empowerment & Econ. Dev. v. WALB-TV*, No. 1:04-CV-132(CDL), 2006 WL 1285037, at *5 (M.D. Ga. May 10, 2006) (description that conduct comprised "child abuse"). These highly qualitative statements differ markedly from statements that describe physical movements: "he slided left," and "he slided right," and "he blocked me," and "he prevented my escape."

## II.     The Law of the Case

Phase One of discovery was to be limited, by agreement of the parties, to "whether Nathan Phillips' statement[s] . . . are true or substantially true, or otherwise not actionable . . . ." Defendants now seize on those last three words to assert that Phase One was to include discovery on all possible matters. This is simply not the case; if it were, and all issues were subject to discovery, then no purpose would have been served to divide discovery into Phases. The point of Phase One was to limit discovery to Defendants' "truth" defense: specifically, to compare the Defendants' published statements about Sandmann sliding left and right and blocking Phillips with the truth that the discovered video and other evidence would reveal.

Phase One discovery was to be limited to "truth" because the District Court had already decided, by necessary implication and consistent with its determination in the prior litigations, that the Defendants' published statements were actionable as statements of fact. The Court's ordering the parties to spend a year in discovery on the issue of "truth" would make no sense if the statements were not "susceptible to being proved true or false" in the first place. As the District Court observed, "[a]ll the claims in the proposed amended complaint turn on determining the truth of what happened in the confrontation between plaintiff and Mr. Phillips." (Appellant's Brief ("App. Br.") at 35). The District Court's promise to revisit these issues at the summary judgment phase, cited by the Defendants, is taken out of context, and its meaning turned on its head. Here is what the District Court actually held, in full:

> [T]he Court believes that discovery is necessary to determine what happened in the unfortunate events which give rise to this litigation, and, to determine whether defendant accurately reported them, and, if it failed to do so, whether the failure was due to negligence or malice. Naturally, following a sufficient period for discovery, *these issues* will again be reviewed at the summary judgment phase under a more stringent standard.

(App. Br. at 35-6 (emphasis added)). The phrase "these issues" refers to the defense of truth, and ultimately the Defendants' negligence in not conducting even a minimal fact-check before publishing. Contrary to the Defendants' claim, the District Court was not stating an intention to revisit the "opinion" issue.

III.   **The Defendants' Alternative Grounds**

The Defendants argue that, should this Court determine that Phillips' vivid description of Sandmann's movements constitute "statements of fact," then this Court should adopt one of their three alternative theories to affirm the District Court's judgment.

### 1.    The Statements are False, not True nor Substantially True

In the alternative, the Defendants argue their statements are in fact true. Yet the multiple videos, the opinion of the linguistic expert, and Sandmann's deposition testimony all make it clear that the "sliding" and "blocking" statements are false. Sandmann never slid, no more than slightly shifting his weight. In no sense that the reasonable reader would understand did Sandmann, who was standing with his classmates while Phillips waded into the middle of the crowd, "block" Phillips or, somehow from in front of Phillips, prevent Phillips from going backwards to retreat. It was Phillips, not Sandmann, who initiated the encounter, walking up to Sandmann and invading his personal space, stopping mere inches from his face while beating a drum. The video evidence permits no reasonable dispute: the videos show that Phillips had available to him several alternative avenues or clear pathways to advance or retreat on the steps of the Memorial, had that been his purpose.

The compiled video evidence makes it plain that Phillips' statements are not true. In response, the Defendants assert that, even though Phillips' statements may

not be true, their "gist or substance" should be construed to be "substantially true," and should thus merit a summary disposition by this Court. (D.B. 54). This argument misapplies the "substantial truth" doctrine. Under Kentucky law, the "substantial truth" doctrine does not create a category of statements that lie between truth and falsity. Instead, "substantial truth" is a doctrine that is meant to address merely incidental information not essential to the content itself. *Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*, 179 S.W.3d 785, 791-792 (Ky. 2005) ("The doctrine of 'substantially true' is a convenient and necessary phrase invented by lawyers and judges to apply in very narrow and limited circumstances and relates only to incidental information and not to essential content."). The Defendants criticize the Plaintiff for citing "only one case," (D.B. 55) yet how many times must the Kentucky Supreme Court articulate state law? This Court is obligated to follow relevant precedents of the Kentucky Supreme Court. *E.g.*, *Std. Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). Phillips' false claims about "sliding" and "blocking" were not information "incidental" to the "essential content": they were the whole of the content. There is no mystery here about any "gist" or ambiguous "substance" to Phillips' statements. The Defendants here were not employing figures of speech. Compare *National College of Kentucky, Inc. v. Wave Holdings, LLC*, 536 S.W.3d 218 (Ky. Ct. App. 2017) (published statement that college is "under fire" for misleading students was "substantially true"; although the

college was not literally on fire, it was in fact under investigation by the Attorney General); *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 248-252 (2d Cir. 2017) (a news reporter characterizing an exploding rifle target as "basically a bomb" was using figurative language, not literal, as the target was not literally a bomb; gist of the statement was "substantially true"); *Croce v. New York Times Company*, 345 F. Supp. 3d 961 (S.D. Ohio 2018) (to find "that the gist or sting of the statement is substantially true[,] the court looks past even minor inaccuracies to find the gist . . . .").

The published statements contain no minor inaccuracies, no figurative language, no words that convey ambiguity and require jury deliberation. The standard for defamation is the average reader or viewer. *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989) (statement is defamatory if "the full content of the statement would 'influence the average reader's readiness to infer that a particular statement has factual context'"); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ("reasonable reader" standard). Even the definition of "block" that the Defendants cite from Webster's Dictionary shows their error: at no point was Sandmann "interposing an obstruction [himself]" (D.B. 59 (brackets in original)). Interpose means "to insert or intervene," according to the same dictionary. Sandmann did not insert himself nor intervene: he just stood in place.

Whatever this Court's view of the facts, it cannot reasonably be said that the Plaintiff has "failed to demonstrate a genuine issue as to the material falsity of any of the alleged defamatory statements." *Bennett v. Cisco Systems, Inc.*, 63 F.App'x 202, 207 (6th Cir. 2003). The conclusive video evidence alone creates, at a minimum, a "genuine issue" as to truth or falsity sufficient to send this case to the jury. If this Court is to rule on this alternate ground, however, it should consider that undisputed video evidence and enter partial summary judgment in favor of Sandmann.

### 2.    The Statements are Defamatory

The Defendants also assert that their published statements are not defamatory. Yet, as the District Court determined in related cases, Phillips' statements—the same statements at issue on this Motion—constitute "defamation per se." *Sandmann v. NBCUniversal, LLC*, E.D. Ky. Case No. 2:19-cv-00056 (RE 43, Page ID# 755). Defamation per se comprises statements where the defamatory character of the statement can be determined without resort to external or extrinsic facts.  *See Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). Jurisdiction in this matter is based on diversity, and thus the law of Kentucky governs the dispute. *E.g.*, *Std. Fire Ins. Co.*, 723 F.3d at 692. Under Kentucky law, statements are defamatory if they tend to "expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (quoting *Digest Publishing Co.*

13

*v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky. 1955)). In this matter, the social vitriol, public obloquy, and continued "canceling" of Sandmann provide ample evidence that the Defendants' published statements had immediate defamatory effect. In these incendiary times, to accuse a white, MAGA-hatted, Catholic teenager of physically assaultive interference with the peaceful protest of a Native American, all while wearing an awkward and embarrassed smile, immediately made Sandmann a headline story on national and social media, all without the need for additional extrinsic information.

The Defendants repeatedly cite to this Court's decision in *Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019) to argue that their statements are not defamatory. *Croce* does not help them. *Croce* involved Ohio law. Ohio is one of the two states that has adopted the innocent construction doctrine. That doctrine holds that, where a statement is capable of both "innocent" and "defamatory" construction, the court must favor the innocent construction. *Croce v. New York Times Co.*, 930 F.3d 787, 797 (6th Cir. 2019) ("[T]his article and the statements in it can comfortably fall within the contours of the innocent-construction rule. Even if the meaning of the article is ambiguous or debatable, an innocent reading can surely be adopted[.]"). Like the vast majority of states, Kentucky has declined to adopt the "innocent construction" doctrine, Kentucky law does not create a presumption that, where there is any ambiguity or debate, the statement is presumed to be non-defamatory.

14

### 3.    The Complaint is Not Barred by the Statute of Limitations

The District Court ruled that the statute of limitations had not begun because Sandmann was seventeen. The statute is unambiguous: when coupled with the one-year statute of limitations for defamation actions, it affords Sandmann until his nineteenth birthday to file a claim. KRS 413.170(1) states, in relevant part: "If a person entitled to bring any action . . . was, at the time the cause of action accrued, an infant, the action may be brought within the same number of years after the removal of the disability . . . ." The Kentucky legislature was specific: this statute of limitations for the benefit of minors applies to all causes of action arising under KRS 413.090 to 413.160; Sandmann's suit is brought pursuant to KRS 413.140(d), which is covered explicitly by the statute. The legislature left no room for judge-made exceptions. Absent a linguistic ambiguity, this Court must interpret KRS 413.170(1) literally. *Smith v. McGill*, 556 S.W.3d 552, 555 (Ky. 2018). In Kentucky, "[t]he words of the statute are to be given their plain meaning unless to do so would constitute an absurd result." *Executive Branch Ethics Comm'n v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002).

Defendants offer a novel argument. They assert that, because Sandmann's representatives sued someone else while Sandmann was a minor, for some reason that means Sandmann cannot now sue the Defendants. The only case the Defendants cite lends no support. *Tallman v. Elizabethtown*, No. 2006-CA-002542, 2007 Ky.

App. Unpub. LEXIS 835 (Ky. Ct. App. Nov. 2, 2007) involved two suits against what was essentially the same defendant (the police department, then the city), and not against two different defendants. Even were it relevant, *Tallman* is an unpublished opinion that courts have refused to give wider scope. *Bradford v. Bracken County*, 767 F. Supp. 2d 740, 752–753 (E.D. Ky. 2011) (dismissal of minor's claims rejected because trial court concluded it would have had to invent an exception to KRS 413.170(1) that the legislature did not provide); *T.S. v. Doe*, 2010 U.S. Dist. LEXIS 107088, at *13 (E.D. Ky. 2011) ("the Supreme Court of Kentucky would not remove a minor's statute of limitation protection simply because a suit was filed by a next friend"); *Newton v. Dennison*, No. 4:14-CV-15-JHM, 2014 U.S. Dist. LEXIS 104594, at *6–7 (W.D. Ky. July 31, 2014) (initiation of litigation by a next friend does not start the limitations period).

### 4.    The Defendants' Supplemental Briefs

Both in their Joint Brief and in each of their individual Supplemental Briefs, the Defendants assert that their publications, when read fairly and as part of a broader scheme, present an entirely "neutral report" on the events in question. This argument fundamentally misapprehends Kentucky law. Kentucky, like the great majority of states, has decisively rejected the "neutral report" defense. *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky. 1981) (rejecting neutral reportage doctrine). Under this defense, a publisher would be absolved from

defamation liability for repeating the defamatory statements of others. *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113 (2d Cir. 1977). This defense is conceptually similar to the familiar "fair report" doctrine that applies to the re-publication of the statements of public officials.

Kentucky's rejection of the "neutral report" defense means that, under Kentucky law, a publisher cannot escape liability by merely providing some version of "balanced reporting." Thus, Defendants' repeated appeals to their supposedly neutral articles does not exonerate them from their negligence. Kentucky law, like that of most states, requires that publishers first conduct a reasonable investigation into the truth of the statements they quote prior to publication. *McCall*, 623 S.W.2d at 886. Publishers are liable for re-publishing defamatory statements of others. *Id.* at 886–87. Negligent re-publication creates defamation liability.

## CONCLUSION

This Court should reverse the District Court's Memorandum Opinion and Order granting summary judgment to the Defendants and remand or enter summary judgment for the Plaintiff.

Respectfully submitted,

*/s/ Todd V. McMurtry*
TODD V. MCMURTRY
JEFFREY A. STANDEN
J. WILL HUBER
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiff-Appellant,
Nicholas Sandmann*

**CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 3997 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 3, 2023              /s/ Todd V. McMurtry
                                      Todd V. McMurtry

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed and served to counsel for Defendants-Appellees by notice through the Court's CM/ECF system this 3rd day of February, 2023.

/s/ Todd V. McMurtry
Todd V. McMurtry