**Case Nos. 22-5734 / 22-5735 / 22-5736 / 22-5737 / 22-5738**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICHOLAS SANDMANN,

*Plaintiff - Appellant,*

v.

NEW YORK TIMES COMPANY
CBS NEWS, INC., *et al.*
ABC NEWS, INC., *et al.*
ROLLING STONE, LLC, *et al.*
GANNETT CO., INC., *et al.*

*Defendants - Appellees.*

On Appeal from the United States District Court for the Eastern District of Kentucky
Honorable William O. Bertelsman, District Judge, Presiding
Case Nos. 2:20-cv-00023, 2:20-cv-00024, 2:20-cv-00025, 2:20-cv-00026, 2:20-cv-00027

**JOINT RESPONSE OF DEFENDANTS-APPELLEES NEW YORK TIMES COMPANY; CBS NEWS INC., ET AL.; ABC NEWS, INC., ET AL.; ROLLING STONE, LLC, ET AL.; AND GANNETT CO., INC., ET AL. IN OPPOSITION TO PLAINTIFF-APPELLANT'S PETITION FOR REHEARING OR REHEARING *EN BANC***

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

Nathan Siegel
Meenakshi Krishnan
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*Attorneys for Appellees ABC News, Inc.,*
*ABC News Interactive,*
*Inc., and The Walt Disney Company*

John C. Greiner
Darren W. Ford
FARUKI PLL
201 E. Fifth St., Suite 1420
Cincinnati, OH 45202
Phone: (513) 632-0313
Fax: (513) 632-0319
jgreiner@ficlaw.com
dford@ficlaw.com

Natalie J. Spears
Gregory R. Naron
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

Dana R. Green
THE NEW YORK TIMES COMPANY
620 8th Avenue
New York, NY 10018
Phone: (212) 556-5290
Fax: (212) 556-4634
dana.green@nytimes.com

*Attorneys for Appellee The New York Times
Company d/b/a The New York Times*

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM
LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Attorneys for Appellees CBS News Inc.,
ViacomCBS Inc., and CBS Interactive Inc.*

Jon L. Fleischaker
Michael P. Abate
William R. Adams
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com
radams@kaplanjohnsonlaw.com
*Attorneys for Appellees Gannett Co., Inc. and
Gannett Satellite Information Network, LLC*

Kevin T. Shook
FROST BROWN TODD LLP
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLP
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

Ryan W. Goellner
 FROST BROWN TODD LLP
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC
and Penske Media Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................1

  I.   THE PANEL ADDRESSED THE CORRECT PUBLICATIONS ...................2

  II.  SANDMANN PRESENTS NO ARGUMENTS THAT MEET THE STANDARD FOR *EN BANC* REVIEW.........................................................7

    A.  The Panel Opinion was supported by and decided under longstanding Kentucky law.................................................................................9

    B.  The Panel did not misinterpret *Milkovich*. ...................................11

    C.  The Panel Opinion did not conflict with *Milkovich* or set landmark precedent. ................................................................................15

CONCLUSION ......................................................................................16

CERTIFICATE OF COMPLIANCE ........................................................21

CERTIFICATE OF SERVICE ................................................................22

# TABLE OF AUTHORITIES

## Cases

*Croce v. Sanders*,
 843 F. App'x 710 (6th Cir. 2021) ........................................................13

*Cromity v. Meiners*,
 494 S.W.3d 499 (Ky. Ct. App. 2015) ..................................................15

*Davenport v. MacLaren*,
 975 F.3d 537 (6th Cir. 2020) (Sutton, J., concurring in the denial of
 rehearing *en banc*) ........................................................................8, 16

*Doe #1 v. Syracuse Univ.*,
 468 F. Supp. 3d 489 (N.D.N.Y. 2020) ..................................................6

*Friendship Empowerment & Econ. Dev. v. WALB-TV*,
 No. 1:04-CV-132(CDL), 2006 WL 1285037 (M.D. Ga. May 10, 2006) ............6

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974) ...........................................................................16

*Issa v. Bradshaw*,
 910 F.3d 872 (6th Cir. 2018) (Sutton, J., concurring in the denial of
 rehearing *en banc*) ...............................................................................8

*Macineirghe v. County of Suffolk*,
 No. 13-cv-1512, 2015 WL 4459456 (E.D.N.Y. July 21, 2015) ........................13

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990) .........................................................................*passim*

*Mitts v. Bagley*,
 626 F.3d 366 (6th Cir. 2010) (Sutton, J., concurring in the denial of
 rehearing *en banc*) ...........................................................................8, 9

*Bartlett ex rel. Neuman v. Bowen*,
 824 F.2d 1240 (D.C. Cir. 1987) (*en banc*) (per curiam) ......................8

*Sandmann v. ABC News, Inc.*,
 No. 2:20-cv-0025 (E.D. Ky. 2020) ........................................3, 4, 6, 13

*Sandmann v. Cable News Network, Inc.*,
No. 2:19-cv-00031, (E.D. Ky. 2019) .......................................................4

*Sandmann v. CBS News, Inc.*,
No. 2:20-cv-0024, (E.D. Ky. 2020) .......................................................3

*Sandmann v. WP Company LLC*,
No. 2:19-cv-00019, (E.D. Ky. 2019) .......................................................4

*Seaman v. Musselman*,
No. 2002-CA-001269, 2003 WL 21512489 (Ky. Ct. App. July 3, 2003) .............................................................................................15

*Vail v. The Plain Dealer Publ'g Co.*,
649 N.E.2d 182 (Ohio 1995) ............................................................10

*Williams v. Blackwell*,
487 S.W.2d 451 (Ky. App. 2016) ......................................................10

## Other Authorities

Fed. R. App. P. 35 ...................................................................................7

Restatement (Second) of Torts, § 563, cmt. d (1977).............................14

**INTRODUCTION**

The petition for rehearing or rehearing *en banc* (the "Petition") filed by Plaintiff-Appellant Nicholas Sandmann ("Sandmann") should be denied. The Panel correctly affirmed the summary judgment award dismissing all of Sandmann's defamation claims against the Defendants[1] on the ground that the Blocking Statements[2] were nonactionable opinion. Sandmann's Petition fails to present any argument that comes remotely close to meeting this Court's strict standard for granting *en banc* review.

In his request for rehearing, Sandmann tries to reinvent his case, offering a variety of arguments that stem from a newfound claim that the Panel analyzed the wrong publications. But both the Panel and the Dissent analyzed the very publications that Sandmann identified in his Complaints—publications that have been the subject of litigation for three and a half years. Sandmann's attempt to now distance himself from the publications at the heart of his lawsuit only reinforces the

---

[1]    The five media defendants whose appellate cases were consolidated by the Court file this joint response to the Petition and will be referred to collectively as "Defendants."

[2]    The "Blocking Statements" are defined on page 4 of the Panel Opinion and the Defendants' publications are described on pages 4-9 of the Panel Opinion (the "Publications"). The Publications are identified in Sandmann's Complaints filed in the Eastern District of Kentucky: ABC, No. 2:20-cv-0025, RE 1, PageID#2; CBS, No. 2:20-cv-0024, RE 1, PageID#2, 40; Gannett, No. 2:20-cv-00026, RE 34, PageID#505; New York Times, No. 2:20-cv-00023, RE 1-7, PageID#85; Rolling Stone, No., RE 1-7, PageID#85.

1

Panel's conclusion that those publications do not support actionable defamation claims.

In his request for *en banc* review, Sandmann offers several iterations of the same argument that the Panel misinterpreted or misapplied a single phrase contained in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). However, Sandmann's strained effort to find supposed error mischaracterizes the Panel Opinion. In any event, his argument also ignores the fact that the Panel Opinion was also decided on Kentucky state law and overlooks this Court's rules, which explicitly mandate that challenging the "application of correct precedent to the facts of the case" is not a valid basis for rehearing *en banc*. 6 Cir. I.O.P. 35(a). Sandmann's Petition should be denied.

## I.    THE PANEL ADDRESSED THE CORRECT PUBLICATIONS

Section I of Sandmann's Petition for Rehearing argues that the Panel misconstrued the relevant context because it addressed the wrong Publications. But the Panel analyzed the very publications upon which Sandmann based his complaints. And the very fact that Sandmann raises this argument for the first time in his Petition speaks more broadly to why the Petition should be denied: Sandmann's argument effectively concedes that the "setting-specific context" provided by the Publications the Panel analyzed does, in fact, support the majority's

holding.[3]  Petition at 4.  So, to create the appearance of error, the Petition invents an alternative context—a supposed distinction between Defendants' "initial publications" and "their subsequent articles," which it maintains the Panel erroneously considered.  *See id.*

However, no such distinction can be made.  Indeed, Sandmann never identifies what "initial publications" he now claims the Panel should have considered and which publications the Panel should have ignored.  The news publications the Panel addressed were the very reports that Sandmann's Complaints alleged were defamatory.  For example, Sandmann maintains the Panel erred because it considered a CBS broadcast interview with Nathan Phillips and "four articles and 'several broadcasts' published by ABC."  *Id.* at 3.  But those were the same publications—and the *only* publications—challenged in the Complaints against those defendants.[4]  In another example, Sandmann's Complaint against

---

[3]     The Panel correctly held that the context in which an allegedly defamatory statement "is presented or worded" lies at the heart of the fact-opinion inquiry. Opinion at 14-15; *see also id.* at 16 (noting case law "underscores the importance of considering Phillip's statements in their totality and in the context of the available evidence").  In its assessment of the relevant context, the Panel noted that "the [Blocking] [S]tatements appeared in stories that provided multiple versions and descriptions of events, putting a reasonable reader on notice that Phillips' statements were merely one perspective among many." *Id.* at 18.

[4]     *See Sandmann v. CBS News, Inc.*, No. 2:20-cv-0024, RE 1, PageID#2, 40 (identifying the alleged "False and Defamatory Publications" by CBS to include "a broadcast of a telephone interview with Nathan Phillips"); *Sandmann v. ABC News, Inc.*, No. 2:20-cv-0025, RE 1, PageID#2 (identifying the alleged "False and

Rolling Stone only mentioned one online article—the same one addressed by the Panel. Opinion at 7-8. Indeed, both the Panel Opinion and the Dissent analyzed all the same news reports for each of the Defendants. *Id.* at 3-9; 21-32.

Moreover, almost all of the news reports at issue were published well after the incident at the Lincoln Memorial had initially become the subject of widespread news coverage by other news organizations—which may be what Sandmann has in mind when he refers to unspecified "initial publications." The incident itself occurred on January 18, 2019, at approximately 5:00 p.m. and began trending on social media within a couple of hours.[5] The actual "initial publications" began around 9 a.m. the next morning (January 19), but none of the Defendants to this appeal published those reports. Sandmann sued other media entities that published news reports in the early hours of January 19.[6]

By contrast, all of the articles and broadcasts at issue in Sandmann's cases against ABC and CBS were published more than 24 hours later, on January 20, 2019. Opinion at 5-7. The sole article at issue in Sandmann's case against Rolling Stone was published four days after the incident, on January 22. *Id.* at 7-8. And some of

---

Defamatory Publications" as "four (4)" online articles and "several broadcasts . . . which were embedded in the False and Defamatory Publications.").

[5]     *See Sandmann v. ABC News, Inc.*, RE 1, PageID# 14.

[6]     *See, e.g.*, *Sandmann v. Cable News Network, Inc.*, No. 2:19-cv-00031, RE 1, PageID#12; *Sandmann v. WP Company LLC*, No. 2:19-cv-00019, RE 65, PageID# 877-78.

the challenged articles published by Gannett appeared more than a week later.  *Id.* at 8.  For that very reason, the Publications included additional context and multiple perspectives on the underlying incident, including Sandmann's.  *See, e.g.*, *id.* at 7 (noting ABC's inclusion of a "different description" by a student of the events than that given by Phillips); *id.* at 6 (noting CBS reported additional video that "had given more context"); and *id.* at 8 (noting Rolling Stone quoted and linked to Sandmann's public statement disputing Phillips' Blocking Statements).  Sandmann's attempt to escape this context is based upon the false premise that he filed different lawsuits based upon unidentified "initial publications."

The same erroneous factual premise about Defendants' news reports undergirds Sandmann's arguments in Section II of his Petition.  Sandmann maintains that the Panel erred because it supposedly held that videos of the incident are "of no relevance" to the fact-opinion inquiry.  Petition at 5.  He further argues that error was grounded in the Panel's failure to recognize that the case should have turned on whether Phillips used some talismanic word like "perceive" sufficiently close to "block."  *Id.* at 5-8.

Here too, Sandmann mischaracterizes the Panel Opinion.  Far from disregarding the videos, the Panel explained that the videos supported the conclusion that Phillips' statements expressed his perspective.  Opinion at 16-17.  For example, the Panel observed that the videos showed Phillips walking forward, and while

multiple other students were moving out of his path, Sandmann was standing in front of him. *Id.* at 17. But whether Sandmann intended to "block" Phillips, or "decided" to "position himself" to stop Phillips, is not discernible from any video. Rather, how both parties to that encounter perceived it is inherently a matter of perspective that is not capable of being proved false. *Id.* at 16-17.[7] This case is hardly unique in that respect. Courts have held statements to be non-actionable opinion when they were based entirely on videos of others' conduct. *See, e.g.*, *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020) (university chancellor's "characterization" of conduct shown on videos as "racist" and "homophobic" was protected opinion); *Friendship Empowerment & Econ. Dev. v. WALB-TV*, No. 1:04-CV-132(CDL), 2006 WL 1285037, at *5 (M.D. Ga. May 10, 2006) (differing views about whether surveillance video that was aired in a newscast showed conduct that was child abuse were nonactionable opinions).

Moreover, the Panel correctly explained that the challenged news reports included links to multiple videos of the encounter so that readers could view the incident for themselves. Opinion at 18. The Panel also correctly noted that the challenged reports included multiple statements from others—including

---

[7]    For example, Sandmann later maintained that he felt blocked by Phillips. *See Sandmann v. ABC News, Inc.*, Sandmann Deposition ("S.D."), RE 74-1, S.D. 184:11-185:12; 258:23-259:10; 260:11-22; 284:7-10. Whether that was so is equally a matter of opinion.

Sandmann's own public statements—making it clear that there were different perspectives on the same events. *Id.* Defendants' disclosure of videos and Sandmann's public statements allowed readers and viewers to decide whether to credit Phillips' *or* Sandmann's perception of the event. Here, too, the Petition's transparent attempt to create the appearance of error by claiming that none of that reporting "was present in the initial publications that formed the basis of this suit" is meritless on its face, and rehearing *en banc* should be denied. Petition at 4.

## II. SANDMANN PRESENTS NO ARGUMENTS THAT MEET THE STANDARD FOR *EN BANC* REVIEW.

Sandmann's arguments for *en banc* review fall far short of the standard required in this Circuit. There is no conflict with any decision of the Supreme Court, this Court, or any other court of appeals. The Panel Opinion plows no new ground. While this case may have attracted more public attention than some others, as a legal matter it is a straightforward defamation case whose dismissal was upheld under both longstanding Kentucky law and Supreme Court precedent. The purpose of *en banc* review is not to give unsuccessful litigants a second chance to present their case to a different panel, but to address important unsettled issues and avoid inconsistent rulings. Sandmann's Petition presents nothing of the sort.

*En banc* review is "not favored" and is limited to cases where it is necessary to: (1) ensure "uniformity of the court's decisions," or (2) resolve "a question of exceptional importance." Fed. R. App. P. 35. This Court has elaborated: "rehearing

*en banc* is an extraordinary procedure which is intended to bring to the attention of the entire Court a precedent-setting error of exceptional public importance or an opinion which directly conflicts with prior Supreme Court or Sixth Circuit precedent." 6th Cir. I.O.P. 35(a) (emphasis added).  Thus, "alleged errors in . . . the facts of the case" and even the erroneous "application of correct precedent to the facts of the case" are inappropriate for rehearing *en banc*.  *Id.*  So are "alleged errors in the determination of state law."  *Id.*

The Sixth Circuit has firmly adhered to these principles because "the trust implicit in delegating authority to three-judge panels to resolve cases as they see them would not mean much if the delegation only lasted as long as they resolved the cases as others see them." *Issa v. Bradshaw*, 910 F.3d 872 (6th Cir. 2018) (Sutton, J., concurring in the denial of rehearing *en banc*).  The decision to grant *en banc* consideration "should be made only in the most compelling circumstances." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in the denial of rehearing *en banc*) (quoting *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1242 (D.C. Cir. 1987) (*en banc*) (per curiam)).

*En banc* review is particularly inappropriate where the issue "at hand turns mainly on what to make of language in Supreme Court decisions. . . ." *Davenport v. MacLaren*, 975 F.3d 537, 543 (6th Cir. 2020) (Sutton, J., concurring in the denial of rehearing *en banc*).  In that case, it is up to "the United States Supreme Court [to]

decide whether a decision is correct and, if not, whether it is worthy of correction." *Mitts*, 626 F.3d at 370 (Sutton, J., concurring) (citation omitted).

Yet Sandmann's only arguments in support of rehearing *en banc* are about nothing more than "what to make of the language" in a single Supreme Court decision, *Milkovich v. Lorain Journal Co.* Sandmann's key argument, is that the Panel "reads *Milkovich* as holding that only 'a core of objective evidence' may be used in determining whether a statement is susceptible of being proved true or false." Petition at 12. He then argues this supposed "holding" both "misinterprets" and "directly conflicts" with *Milkovich*.

This argument fails to meet this Court's standard for rehearing *en banc* for any one of three reasons. *First*, the Panel affirmed the district court's grant of summary judgment under both Kentucky law and the First Amendment. The Petition does not challenge the Panel's state-law analysis, and even if it did that would not warrant rehearing *en banc*. *Second*, much like Sandmann's claim that the Panel read the wrong news reports, the Panel never made the "holding" that he now attacks. *Third*, even if the Panel had, that would merely present a disagreement about how to interpret language in *Milkovich*, not a "direct conflict" with that decision.

**A.    The Panel Opinion was supported by and decided under longstanding Kentucky law.**

This Court need not even consider Sandmann's mistaken analysis of *Milkovich* because his Petition wholly ignores that the Panel found each of the

statements to be protected opinion under *Kentucky* law. As the Panel correctly noted, Kentucky courts have "adopt[ed] the Restatement (Second) of Torts approach to distinguishing between 'pure' and 'mixed" opinion.'" Opinion at 13 (citing *Yancey*, 786 S.W.2d 854, 857 (Ky. 1989)). Kentucky courts have referred to this doctrine as the state's "opinion privilege." *Williams v. Blackwell*, 487 S.W.2d 451, 456 (Ky. App. 2016). This state-law privilege predates *Milkovich* and takes a different approach as a matter of state law. *Id.* at 454; *see also Vail v. The Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 185 (Ohio 1995) (noting that despite *Milkovich*'s holding as to the First Amendment, Ohio's "totality of the circumstances test" controlled the question of whether a statement was a matter of opinion under state law).

The Panel correctly followed, as it must, Kentucky's approach for distinguishing nonactionable opinions from actionable statements of fact. Nor does Sandmann argue otherwise. Thus, Sandmann has failed to refute the Panel's decision that the challenged statements are not actionable as libel under Kentucky law to begin with. His disagreements as to whether these non-actionable opinions would be doubly protected by the First Amendment under *Milkovich* are not only incorrect, but entirely irrelevant to the outcome of this case. For this reason alone, Sandmann's Petition should be denied.

**B.     The Panel did not misinterpret *Milkovich*.**

Section III of Sandmann's argument for rehearing and Sections I-III of his argument for rehearing *en banc* all reiterate the same basic claim—*i.e.*, that the Panel misconstrued *Milkovich* by "holding" that the Supreme Court imposed a "requirement" that defamation Plaintiffs present a "core of objective evidence" to demonstrate a statement is factual.  That was error, Sandmann claims, because *Milkovich*'s reference to a "core of objective evidence" was simply one "example of proof" used in that case, not a "requirement" applicable to all cases.

But the Panel made no such "holding" regarding *Milkovich* and it imposed no such "requirement."  Rather, the Panel's reference to a "core of objective evidence" is quoted directly from *Milkovich* and is entirely consistent with the principles established in that case.  *See* Opinion at 16-17.  In fact, the Panel interprets both the actual holding of *Milkovich* and its reference to "objective evidence" the same way Sandmann does.

The only "holding" the Panel made regarding *Milkovich* was to reiterate the fundamental constitutional standard established in that case for differentiating between statements of fact and opinion to ensure that state libel law does not infringe upon the First Amendment.  Opinion at 17 ("We have interpreted *Milkovich* to stand for the proposition that 'a viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively

11

verifiable facts.'") (citations omitted). Sandmann points to no error in that "holding," and indeed his own recitation of the *Milkovich* standard is substantively identical. *See* Petition at 11 ("[A] viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts."). In other words, both Sandmann and the Panel interpreted the same language from the same governing Supreme Court decision and applied it to the same facts. Sandmann merely claims the Panel reached the wrong conclusion. But "errors in the application of correct precedent to the facts of the case, are . . . not for rehearing *en banc*." 6th Cir. I.O.P. 35(a).

Indeed, far from imposing any new "requirement" of "objective evidence," the Panel correctly emphasized that there are no "bright-line rule[s]" that courts must follow to distinguish fact from opinion and the "the inquiry is setting-specific." Opinion at 14-15. The Panel then reviewed all the evidence in the record and provided multiple reasons that the challenged statements were, in this context, rooted in subjective perception and not objectively verifiable. Among other things, the Panel analyzed the figurative nature of other words Phillips used in connection with the blocking statements (Opinion, 15-16), the dictionary definitions of "block" and "retreat" (*id*. at 15), the full context of the Appellees' publications (*id.* at 5-9, 18-19),

the stipulated videos of the standoff between Phillips and Sandmann (*id.* at 2-4, 17) and Sandmann's own deposition testimony (*id.* at 4).[8]

The Panel also properly considered how this Court and other courts have analyzed the context of similar statements, including in *Croce v. Sanders*, 843 F. App'x 710 (6th Cir. 2021) (finding a statement that plagiarism was "routine" in Croce's work was nonactionable opinion because "there is no objective line" that determines "how many problems make something routine."); *Macineirghe v. County of Suffolk,* No. 13-cv-1512, 2015 WL 4459456 (E.D.N.Y. July 21, 2015) (finding the allegation that a man "blocked" a police car was nonactionable opinion); and *Milkovich.* With respect to *Milkovich*, the lack of a core of objective evidence in the record was just one point that the Panel concluded distinguished this case from *Milkovich*. While the statements imputing perjury in the *Milkovich* case were verifiable facts that could be proven by comparing available objective evidence like the transcripts of the relevant proceedings, the Panel correctly observed that the Blocking Statements were a matter of perception that could not be proven by such evidence. The objective evidence available—the stipulated videos of the

---

[8]    Sandmann testified that Phillips "could have" perceived that Sandmann "intended to stop [Phillips'] path forward." *Sandmann v. ABC News, Inc.*, S.D., RE 74-1, PageID#2164; *see also id.* at PageID#2158 & Ex. E, RE 53-13 at PageID#1048-1049 (Sandmann admitting he planted his feet in front of Phillips to stand up for his school "and just face up"); *id.* Ex. G, RE 53-15 at PageID#1053 (Sandmann stating that "unlike others at my school [I] didn't step out of the way because [Phillips] was trying to intimidate us.").

encounter—cannot answer the question of whether Phillips' stated perception of Sandmann's intent was factual, let alone correct. Opinion at 17.

Sandmann's quarrel with the Panel Opinion relies on the very same language in *Milkovich*. He just argues it cuts the other way, claiming that the stipulated videos are "the ultimate in objective evidence." Petition at 8. The Panel thus treats the language in *Milkovich* exactly as Sandmann does—not as a "requirement," but rather as an "example of proof" that merits consideration, but only as one among many context-specific factors. Sandmann's real complaint is not about an error of law, he simply disagrees with the Panel's assessment of the record. That is not a basis for seeking rehearing *en banc.*

Sandmann's remaining arguments that the Panel misconstrued *Milkovich* are similarly rooted in the application of established law to facts and fare no better. For example, Sandmann argues that *Milkovich* supports his case because the statement at issue there (an allegation of perjury) also could have required an analysis of the plaintiff's subjective intent. But Sandmann's simplistic comparison of the words "block" and "lie" ignores a fundamental principle of defamation law: context matters. *See, e.g.*, Restatement (Second) of Torts, § 563, cmt. d (1977) ("In determining the meaning of a communication, words, whether written or spoken, are to be construed together with their context."). Both "block" and "lie" can be stated as an assertion of fact in the context of one case, but as an opinion in the context of

14

another.  *See, e.g.*, *Cromity v. Meiners*, 494 S.W.3d 499, 504 (Ky. Ct. App. 2015) (statement that plaintiff was "an out and out liar" held to be non-actionable opinion).  Indeed, Kentucky courts have even found an accusation of perjury to be non-actionable opinion in certain circumstances.  *Seaman v. Musselman*, No. 2002-CA-001269, 2003 WL 21512489 (Ky. Ct. App. July 3, 2003).

The facts in *Milkovich* are also distinguishable because they involved an accusation of a crime.  *Milkovich*, 497 U.S. at 21-22.  Accusations of crimes have long been held to be actionable in defamation law, and there are well-established objective standards for adjudicating criminal conduct.  By contrast, statements made by someone immersed in a crowded and charged confrontation about "who-was-blocking-who" are not remotely comparable to a published accusation of perjury, particularly where the Blocking Statements were published within the context of news reports presenting both perspectives.

### C.    The Panel Opinion did not conflict with *Milkovich* or set landmark precedent.

Finally, Sandmann broadly argues that the Panel Opinion "conflicts" with *Milkovich*, but never identifies any actual conflict.  As discussed above, Sandmann does not and cannot dispute that the Panel correctly articulates *Milkovich*'s constitutional standard for distinguishing fact and opinion.  There is therefore no "direct conflict" with any Supreme Court precedent.  Any supposed question about the interpretation of "a core of objective evidence" in *Milkovich* is just a question

15

regarding "what to make of language in Supreme Court decisions. . . ." *Davenport*, 975 F.3d at 543  (Sutton, J., concurring in the denial of rehearing *en banc*).  Such questions are not the basis for rehearing *en banc*.

Sandmann's argument that the Panel Opinion represents a landmark for defamation law is also wrong.  In his view, any finding that the Blocking Statements are protected opinion is groundbreaking because the "*Milkovich* test militates in favor of statements that are close to the line to be characterized as statements of fact." Petition, 14.  This case is not "close to the line," but even if it were, the law is just the opposite.  The Supreme Court has consistently held that close questions should be resolved in favor of protecting speech in order to preserve the "breathing space" essential to the exercise of freedom of the press. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974).

This is not a "landmark case." Rather, this is a case that, like numerous others, was properly adjudicated under well-established state law and Supreme Court precedent.  All disagreements in this case have been, and continue to be, about the result of applying those precedents to the facts of this case.   While those disagreements deserve respect, they do not warrant further review.

## CONCLUSION

For the foregoing reasons, Sandmann's Petition for Rehearing or Rehearing *En Banc* should be denied.

Dated: September 25, 2023              Respectfully submitted,


                                      */s/ Nathan Siegel*
                                      Nathan Siegel
                                      Meenakshi Krishnan
                                      DAVIS WRIGHT TREMAINE LLP
                                      1301 K St. NW, Suite 500
                                      Washington, DC 20005
                                      Phone: (202) 973-4237
                                      Fax: (202) 973-4437
                                      nathansiegel@dwt.com
                                      meenakshikrishnan@dwt.com


                                      Robert B. Craig
                                      TAFT STETTINIUS & HOLLISTER LLP
                                      50 East RiverCenter Blvd., Suite 850
                                      Covington, KY 41011-1683
                                      Phone: (859) 547-4300
                                      Fax: (513) 381-6613
                                      craigr@taftlaw.com

                                      *Attorneys for Appellees ABC News, Inc.,*
                                      *ABC News Interactive,*
                                      *Inc., and The Walt Disney Company*


                                      */s/ John C. Greiner*
                                      John C. Greiner
                                      Darren W. Ford
                                      FARUKI PLL
                                      201 E. Fifth St., Suite 1420
                                      Cincinnati, OH 45202
                                      Phone: (513) 632-0313
                                      Fax: (513) 632-0319
                                      jgreiner@ficlaw.com
                                      dford@ficlaw.com

Dana R. Green
THE NEW YORK TIMES COMPANY
620 8th Avenue
New York, NY 10018
Phone: (212) 556-5290
Fax: (212) 556-4634
dana.green@nytimes.com

*Attorneys for Appellee The New York Times
Company d/b/a The New York Times*


*/s/ Natalie J. Spears*

Natalie J. Spears
Gregory R. Naron
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM
LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Attorneys for Appellees CBS News Inc.,
ViacomCBS Inc., and CBS Interactive Inc.*

*/s/ Michael P. Abate*

Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Attorneys for Appellees Gannett Co., Inc.
and Gannett Satellite Information Network,
LLC*

*/s/ Kevin T. Shook*

Kevin T. Shook
FROST BROWN TODD LLP
One Columbus, Ste 2300
10 W. Broad Street
Columbus, OH 43215-3484
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLP
301 East Fourth Street, Ste 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

Jason P. Renzelmann
FROST BROWN TODD LLP
400 W. Market Street, Ste 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
jrenzelmann@fbtlaw.com

*Attorneys for Appellees Rolling Stone, LLC
and Penske Media Corporation*

# CERTIFICATE OF COMPLIANCE

1.      This response complies with the type-volume limitation because it contains 3,898 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  September 25, 2023

*/s/ Kevin T. Shook*
Kevin T. Shook

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023, I electronically filed the foregoing Joint Response to Petition for Rehearing or Rehearing *En Banc* for Defendants-Appellees with the Court using the CM/ECF system upon all counsel of record.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Kevin T. Shook*
Kevin T. Shook

0144420.0730688   4890-7394-1633